# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| MOLLY SOSTAND and RAYMOND SOSTAND, individually and as the representative of THE ESTATE OF CHRISTOPHER GEORGE SOSTAND, deceased, | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 4:07-CV-3858 |
| KANSAS CITY SOUTHERN RAILWAY COMPANY, LEWIS E. CUNNINGHAM, and RAILPROS, INC. | § § § § | |
| Defendants. | § § | |

## MEMORANDUM AND ORDER

In this negligence and wrongful death case, Defendants Lewis E. Cunningham ("Cunningham") and RailPros, Inc. ("RailPros") have moved for summary judgment on Plaintiffs' negligence claim.[1] Plaintiffs Molly and Raymond Sostand, individually and as representative of the estate of Christopher George Sostand, deceased, have

---

[1] Lewis E. Cunningham and Railpros, Inc.'s Motion for Summary Judgment as to All Claims by Plaintiffs [Doc. # 40] ("Motion").

responded.[2]   Defendants replied, and Plaintiffs filed a surreply.[3] Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that the Motion should be **denied**.

## I.    BACKGROUND

Christopher George Sostand was struck by a train and killed on December 21, 2005.  Sostand was employed by Brown's Machine Works ("Brown") as a "feeder" on a railroad spiking crew, and had been employed in the position for approximately one month.  Brown was under contract with Kansas City Southern Railway Company ("KCS") to provide track maintenance along the KCS track from Pittsburg, Kansas, through Texas.  Sostand was required to complete, and did complete, a KCS safety course and examination before receiving approval to work on the KCS rail line.

On the day in question, Sostand and the rest of the Brown crew were given their daily job briefing by Defendant Lewis Cunningham, a flagman contracted by Defendant RailPros. "Flagman" is defined by federal regulation as follows:

an employee designated by the railroad to direct or restrict the movement of trains past a point on a track to provide on-track safety for roadway

---

[2]    Plaintiffs' Response to Defendants Railpros, Inc. and Lewis Cunningham's Motion for Summary Judgment [Doc. # 48] ("Response").

[3]    Lewis E. Cunningham and Railpros, Inc.'s Reply to Plaintiffs' Response to Motion for Summary Judgment [Doc. # 82] ("Reply"); Plaintiffs' Reply to Defendants Railpros, Inc., and Lewis Cunningham's Reply to Plaintiffs' Response to Motion for Summary Judgment [Doc. # 83] ("Surreply").

workers, while engaged solely in performing that function.[4]

The parties agree that Cunningham was the Employee in Charge ("EIC") over the

Brown crew.[5]

At the job briefing on December 21, Cunningham told the Brown crew that

KCS had granted them "track and time" limits until 13:01 hours,[6] and that they "were

headed to [Farmersville] to tie up [their] machines there."[7]  However, on the way to

---

[4]      49 C.F.R. § 214.7.  Plaintiffs argue that Cunningham also was a "lookout" and "watchman," which is defined by federal regulation as follows:

> Watchman/lookout means an employee who has been annually trained and qualified to provide warning to roadway workers of approaching trains or on-track equipment. Watchmen/lookouts shall be properly equipped to provide visual and auditory warning such as whistle, air horn, white disk, red flag, lantern, fusee. A watchman/lookout's sole duty is to look out for approaching trains/on-track equipment and provide at least fifteen seconds advanced warning to employees before arrival of trains/on-track equipment.

49 C.F.R. § 214.7.  Defendants vigorously dispute that Cunningham had watchman/lookout duties.  *See* Reply, at 3-6.

[5]      Response, at 3-4; Reply, at 3 ("The summary judgment evidence shows that Mr. Cunningham was assigned the job of flagman (or Employee in Charge) for the Browns' Machine Works crew").

[6]      Defendant states that the crew was safe on the tracks during that time, because no trains were permitted to operate on that section of track.  Motion, at 3 n. 2 (citing 49 C.F.R. § 214.323(c) ("The train dispatcher or control operator shall not permit the movement of trains or other on-track equipment onto the working limits protected by foul time until the roadway worker who obtained the foul time has reported clear of the track.")).

[7]      Deposition of Lewis Edwin Cunningham (Exhibit 4 to Response) ("Cunningham (continued...)

Farmersville, at a time not identified in the record, Cunningham received a request

from another work crew that the Brown crew stop working and clear the track by

putting its machines in a non-operative side track (the "Copeville siding"), because

the other crew "would not be able to accommodate what [the Brown crew] needed to

do to get into the track at Farmersville prior to a train."[8]   Cunningham therefore

radioed his lead machine to stop before the Copeville siding, and threw the switch to

allow them to enter the siding.[9]   Cunningham testified in his deposition that he was

unaware that a train was approaching.[10]

At 12:49 hours, after clearing to the Copeville siding, Cunningham reported to

the KCS dispatcher that his crew had cleared the track.[11]   Defendants maintain that,

after this release by Cunningham, the Brown crew members were no longer permitted

---

[7]       (...continued)
          Deposition"), at 28.

[8]       *Id*. at 29.

[9]       *Id*. at 30.   *See* Deposition of Gregory Adams (Exhibit B to Motion), at 81
          (Cunningham told the crew that they needed to clear the track for a train, and the crew
          exited to the Copeville siding).

[10]      Cunningham Deposition, at 40 ("I did not inform them of [the train's] imminent
          arrival because I didn't know it").   This testimony contradicts the testimony of
          Adams, cited above, who stated that Cunningham told the crew to clear the track for
          a train.

[11]      KCS Track and Time/Work and Time Limits Form, dated December 21, 2005
          (Exhibit A to Motion) (showing "release time" at 12:49 hours).

to "foul the track."[12]  Defendants state that the crew was awaiting its next "track and time" limit, and had waited approximately one hour when Sostand fouled the track and was struck by the train.  Defendants argue that the "track and time" safety procedures were in place and were followed by Cunningham, and that Cunningham had no further safety duties.[13]

Plaintiffs argue, however, that Cunningham had additional safety duties as the EIC of the Brown crew.  In particular, under KCS Safety Rule 21.3, Cunningham was required to conduct job briefings when on-track safety procedures changed during the work period.[14]  Plaintiffs argue that entering the Copeville siding on December 21, 2005, was "a clear departure" from the instructions that Cunningham testified he gave to the Brown crew at the daily job briefing that morning, and that he had not conducted an additional safety briefing or informed the crew about any change in safety procedures.[15]  Plaintiffs also have presented evidence that members of the crew

---

[12]  "Foul a track" is defined by federal regulation as "the placement of an individual or an item of equipment in such proximity to a track that the individual or equipment could be struck by a moving train or on-track equipment, or in any case is within four feet of the field side of the near running rail."  49 C.F.R. § 214.7.

[13]  Reply, at 6.

[14]  Response, at 3-4; KCS Safety Rules (Exhibit 4 to Cunningham Deposition), at bates-stamped pages 11-12 (Safety Rule 21.3).

[15]  Response, at 4; Affidavit of James Charles Mineo (Exhibit 1 to Response) ("Mineo (continued...)

were unaware that they were in the siding because a train was approaching on the

main track, and that Cunningham did not provide a train approach warning.[16] Several

of Sostand's coworkers stated that, when parked in a siding, Cunningham's safety

procedure was to provide a warning when a train approached, and therefore that crew

members typically sat on their machines until receiving the warning.[17]  Plaintiffs'

witnesses also state that Cunningham failed to provide the train approach warning on

---

[15]        (...continued)
Affidavit"), at 2; Deposition of Charles Edward Pickens (Exhibit 2 to Response)
("Pickens Deposition"), at 13.  Defendants request that Mineo's affidavit be stricken
because the affidavit was prepared by counsel.  Reply, at 2.  This objection is
overruled. While the Court finds problematic the affidavit's use of words that are not
in the affiant's vocabulary, in this case the objection does not warrant striking the
entire affidavit, and the Court has no reason to suspect that the facts recounted in the
affidavit are unreliable.  Defendant also objects to Mineo's statements regarding what
Sostand was told or knew on the day of the accident.  *Id.*  The Court does not rely on
any statements from Mineo's affidavit to which this objection applies.

[16]        Pickens Deposition, at 14-18; Deposition of Earnest Dwayne Zeno (Exhibit 3 to
Response) ("Zeno Deposition"), at 13.  Defendants object to the testimony of Pickens
and Zeno "as expert opinions on railroad, flagging, or maintenance of way
procedures," complaining that Plaintiffs attempt to use the Pickens and Zeno
testimony to establish the duties of a flagman and a watchman/lookout, as well as
which duties applied to Cunningham.  Reply, at 3.  The Court accepts the portions of
testimony given by Pickens and Zeno as fact witnesses, not expert witnesses.

[17]        Mineo Affidavit, at 1 (stating that the crew had entered siding multiple times and had
always received a train approach warning from Cunningham). *See* Pickens
Deposition, at 15 (after entering the Copeville siding, the crew sat on their machines
and awaited instruction); *id.* at 23-24 (Cunningham had informed the crew, in the
past, when a train was approaching).

December 21, 2005, and that the crew was surprised by the train's arrival.[18]

Sostand was struck and killed by KCS train 683.  When the train arrived, Cunningham was in his truck in a location that made it impossible for him to provide the crew with a train approach warning.[19] Plaintiffs argue that Cunningham's failure to provide a train approach warning, or to clearly inform crew members of the change in protection procedures, violated Safety Rule 21.3, and that the warning would have given Sostand sufficient time to avoid being struck by the train.

## II.   **SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.[20]   Summary

---

[18]    Mineo Affidavit, at 2 ("I did not realize that the train was approaching until the train was on top of us. . . . I had to jump off on the main track side and sprint around my machine to avoid the [KCS] train. . . . Prior to the train's arrival and impact with Chris Sostand, the train did not sound an audible warning, whistle, or bell."); Pickens Deposition, at 15-16 (Pickens did not know a train was approaching and first realized when he saw Zeno, another crew member, jump off the machine both men were sitting on; Pickens never heard a whistle or bell); Zeno Deposition, at 12-13 (Zeno was unaware that a train was approaching and did not hear a whistle or bell).

[19]    Response, at 6; Pickens Deposition, at 19-25.

[20]    *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers*
                                                                                        (continued...)

judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[21]

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."[22] The moving party, however, need not negate the elements of the non-movant's case.[23] The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case."[24]

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.[25] "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a

---

[20]     (...continued)
        *Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

[21]     FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

[22]     *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

[23]     *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

[24]     *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (internal citations and quotations omitted).

[25]     *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).

reasonable jury could return a verdict for the nonmoving party."[26]

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party.[27]  However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'"[28]  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.[29]  Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden.[30]  Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case."[31]  In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary

---

[26]   *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

[27]   *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

[28]   *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)).

[29]   *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).

[30]   *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).

[31]   *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).

facts.[32]

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.[33]   A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.[34]

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[35]

## III.   ANALYSIS

Under Texas law, the elements of a negligence cause of action are (1) a legal duty owed by one party to another, (2) a breach of that duty, and (3) damages

---

[32]   *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

[33]   *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Medical Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).

[34]   *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

[35]   *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal citations and quotations omitted).

proximately caused by the breach.[36]   The existence of a duty is a question of law.[37]

However, in some circumstances, resolution of the legal issue "'may require the

resolution of disputed facts or inferences which are inappropriate for legal

resolution.'"[38]

The parties' main dispute on summary judgment concerns what duty was owed

by Cunningham and Railpros to Sostand.  Plaintiffs argue that Cunningham had a

duty, as EIC, to provide a train approach warning, and that Cunningham's failure to

provide said warning was a breach of his duty, resulting in Sostand's death.

Defendants argue that, under the "track and time" safety procedure, Cunningham's

only duty was to clear the crew to the siding and release the track, and that he had

satisfied his duty.  Defendants also argue that the "track and time" procedure was

exclusive of other methods and eliminated the need for a train approach warning

because the workers were in the siding and thus protected.[39]

On this record, the Court is not satisfied that, as a matter of law, use of the

---

[36]    *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009).

[37]    *Id*.

[38]    *Id*. (quoting *Fort Bend County Drainage Dist. v. Sbrusch,* 818 S.W.2d 392, 395 (Tex.1991)).

[39]    *See* Deposition of David Brookings ("Brookings Deposition") (Exhibit D to Reply), at 26-27.

"track and time" procedure eliminated any further duty by Defendants to provide a train approach warning.  Defendants agree that Cunningham was the EIC, and Plaintiffs have presented evidence that the EIC is required to conduct subsequent safety briefings if safety procedures changed during the work period.[40]  There remain genuine issues of material fact about what RailPros and Cunningham knew at or about 12:49 when they were told to clear the main track and enter the Copeville siding, what knowledge Cunningham had about the oncoming train KCS 683, and whether Cunningham had a duty, or a practice on which the Brown crew was entitled to rely, to give the Brown crew a further warning.

## IV.   CONCLUSION

For all of the foregoing reasons, it is hereby

**ORDERED** that Lewis E. Cunningham and Railpros, Inc.'s Motion for Summary Judgment as to All Claims by Plaintiffs [Doc. # 40] is **DENIED**.

SIGNED at Houston, Texas, this **27<u>th</u>** day of **October, 2009**.

Nancy F. Atlas
United States District Judge

---

[40]     KCS Safety Rules (Exhibit 4 to Cunningham Deposition), at bates-stamped pages 11-12 (Safety Rule 21.3).